**This order is SIGNED.**



**Dated: October 28, 2016**

**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**



*mpw*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH
IN THE CENTRAL DIVISION

| | |
|---|---|
| In re: | Case No. 04-28075 |
| **EUROGAS, INC.**, | Chapter 7 |
| Debtor. | Judge William T. Thurman |

MEMORANDUM DECISION

The matter before the Court is the Motion to Approve Agreement (the "Motion") filed by Elizabeth Loveridge, the Chapter 7 Trustee ("Trustee"). In conjunction with the Motion, the Trustee also filed a Notice of Proposed Abandonment. The Slovak Republic, a creditor, filed an objection to both the Motion and the Notice of Proposed Abandonment.

An evidentiary hearing on the Motion was held on September 8, and continued to September 26 and October 17, 2016. Reid Lambert appeared on behalf of the Trustee, who was also present. Michael Johnson appeared on behalf of the Slovak Republic. Mona Burton and Doyle Byers appeared on behalf of Eurogas, Inc. ("Eurogas II"), a successor entity to the Debtor Eurogas ("Eurogas I"), in support of the Motion. Jarrod Martin appeared on behalf of Texas Eurogas ("TEG"), a creditor of Eurogas I that also supports the Motion. The parties presented

1

oral argument and called witnesses to testify and be cross-examined and submitted other

evidence. After considering the arguments of counsel, hearing the witnesses, reviewing the

exhibits and conducting an independent review of the law, the Court makes the following

findings of fact and conclusions of law. This memorandum decision constitutes this Court's

statement pursuant to Federal Rule of Civil Procedure 52, made applicable to this case by Federal

Rules of Bankruptcy Procedure 9014 and 7052, of its reasons for granting the Motion and

approving the Notice of Abandonment.

## I. JURISDICTION

The jurisdiction of this Court is properly invoked under 28 U.S. C. § 1334. This is a core

proceeding within the meaning of  28 U.S.C. § 157(b)(2)(A) and this Court may enter a final

order. Venue is proper under the provisions of 28 U.S.C. §§ 1408 and 1409.

At the Trustee's request, notice of the hearing was sent by the Bankruptcy Noticing

Center to all parties in interest on the original notice date of August 24, 2016. Subsequently, the

Court and Trustee were made aware of additional parties in interest. The matter was discussed at

the hearing held October 17, 2016. The Court ordered the Trustee to send notice to the additional

parties by any means at her disposal, and shortened the time for notice due to the time pressures

present in this case. The Trustee filed a declaration[1] describing the methods and efforts she made

to provide notice to the additional parties. The Court finds that the notice to all parties in this

case meets the standards of Rule 6007(a) and Rule 9019(a), and that the Trustee's notice to the

---

[1]Declaration of Elizabeth R. Loveridge, Chapter 7 Trustee, Dkt. No. 278 filed October 18, 2016.

additional parties "is appropriate in the particular circumstances"[2] of this case.

## II. PROCEDURAL HISTORY

This Chapter 7 bankruptcy was initiated on May 28, 2004 when judgment creditor W. Steve Smith filed an involuntary petition of bankruptcy against Eurogas I. Mr. Smith is a bankruptcy trustee in Houston, Texas who obtained judgments against Eurogas I while acting as trustee for various bankruptcy estates of corporations and individuals. Mr. Smith subsequently obtained a judgment against Eurogas I in the amount of $113,371,837.65, which was filed as Claim 1-1 in Eurogas I's bankruptcy. TEG acquired Claim 1-1 from Trustee Smith on approximately September 24, 2007.

The principals of Eurogas I did not file schedules and statements after the order for relief was entered by this court.  On motion from the trustee, Joel T. Marker, (the "Former Trustee"), on January 27, 2005, this Court signed an order designating Wolfgang Rauball, Reinhard Rauball, and Hank Blankenstein as the three principals of Eurogas I who were responsible for filing statements and schedules, and ordered them to file statements and schedules, and to turn over property and records of the estate to the Former Trustee (the "Order to File Statements"). Neither Eurogas I nor the individuals complied with the Order to File Statements, and no statements or schedules were filed, nor were the books and records turned over to the Former Trustee while the case was originally pending.[3] The Former Trustee conducted an investigation,

---

[2]11 U.S.C. § 102(1)(A).

[3]After the case was reopened and the Slovak Republic gained standing as a creditor, the Slovak Republic filed a motion for order to show cause why the individuals who were designated in the Order to File Statements should not be held in contempt for failure to obey the order, or for an order compelling compliance. Eurogas I filed its statements and schedules on October 13, 2016. Wolfgang Rauball was present at a hearing and testified about the statements and

liquidated Eurogas I's interest in several affiliated companies, and distributed approximately

$700,000 to creditors. The majority of the distribution was received by TEG, the holder of Claim

1-1 for $113,371,837.65. The distribution paid 0.56% of the claims in the case. The case was

closed on March 19, 2007.

In September 2015, TEG sent a letter to Vince Cameron, Assistant U.S. Trustee. TEG

urged that the bankruptcy case be reopened to investigate whether certain claims arising from

interests held by a partially-owned subsidiary of Eurogas I in mineral claims commonly referred

to as the "talc deposits" located in the Slovak Republic (the "Talc Claims") were property of the

bankruptcy estate.

Upon motion of the U.S. Trustee, this Court entered an order to reopen the case on

December 21, 2015. The order stated that the motion to reopen was granted "for the specific

purpose of determining the bankruptcy estate's interest in the asset identified in the Motion to

Reopen; and it is further; ordered that the U.S. Trustee is directed to appoint a chapter 7 trustee to

investigate the bankruptcy estate's interest in the asset identified in the Motion to Reopen." The

identified asset is Eurogas I's interest in the Talc Claims.

The Trustee investigated the Talc Claims and communicated with the parties in interest

and their representatives. After negotiations which will be more fully described below, the

Trustee and Eurogas II entered into an Agreement (the "Agreement"). On August 18, 2016, the

Trustee filed a Motion to Approve Agreement, along with a notice and opportunity for hearing.

An objection was filed by the Slovak Republic, thus triggering the necessity of holding a hearing

---

schedules, and explained why they were not filed as ordered previously. The Court found his
explanation acceptable. The Slovak Republic's motion was denied as moot.

4

and creating a contested matter as contemplated by Rule 9014 of the Bankruptcy Rules.

Claims 3-1 and 4-1 were originally held by O&F Proinvest AG, a Swiss corporation, in the amount of $240,181 each. Those claims were transferred to the Slovak Republic pursuant to a transfer agreement, under which the Slovak Republic paid $6,000 for both claims. The Slovak Republic filed the Transfer of Claim the day after the Motion was filed. The Slovak Republic filed an objection to the Motion and the Notice of Proposed Abandonment. The Court conducted three separate days of hearings. At all three hearings, the Court heard testimony and received exhibits.

## III. THE TALC CLAIMS

The Trustee's Motion is a small part of a lengthy dispute in Europe, and so the Court finds it necessary to provide enough background to set this matter in context.

Eurogas I was formed as a Utah Corporation in 1985 under the name of Northampton, Inc. Its name was changed to Eurogas, Inc. in 1994. Eurogas I was administratively dissolved in 2001 for failure to file an annual report and pay the annual fee as required by Utah law. The involuntary petition of bankruptcy was filed on May 18, 2004. On November 15, 2005, to address the administrative dissolution, Eurogas II was incorporated in the state of Utah, with the same officers as Eurogas I. In July of 2008, Eurogas II executed a Joint Unanimous Consent Resolution Approving Proposed Class "F" Reorganization pursuant to which it sought to effectuate a merger with Eurogas I and assume all of Eurogas I's assets and liabilities (the "Merger").

Eurogas I was the sole stockholder of an Austrian company, EuroGas GmbH. On the date the bankruptcy petition was filed, EuroGas GmbH owned 33% of the stock in Rozmin s.r.o.

5

("Rozmin"), a Slovakian company which owned the Talc Claims. The rest of the stock was held

by Belmont Resources, Inc., a Canadian corporation ("Belmont"), and by one other corporate

entity that is not relevant to this case. The Slovak Republic revoked the mining rights to the talc

deposits on December 30, 2004. Judicial proceedings in the Slovak Republic then ensued, in

which Rozmin challenged the revocation of its mining rights and sought the reinstatement of

those rights. There have been multiple lawsuits on this issue in the Slovak Republic in the past

decade, and the matter is unresolved.

On June 25, 2014, Eurogas II and Belmont commenced arbitration with the Slovak

Republic on the matter of the Talc Claims (the "Arbitration Proceeding") before the International

Centre for Settlement of Investment Disputes in Paris, France (the "Arbitration Tribunal")

pursuant to the terms of a Bilateral Investment Treaty between the United States and the Slovak

Republic. The trial in the Arbitration Proceeding was scheduled to take place only a few days

after the original hearing on the Motion. The Slovak Republic has challenged the Arbitration

Tribunal's jurisdiction on various grounds, including that Eurogas II's interest in the Talc Claims

remained property of Eurogas I's bankruptcy estate and was not transferred to Eurogas II in the

Merger. Thus, the question of whether or not the Talc Claims were abandoned by the Former

Trustee is of great interest to both Eurogas II and the Slovak Republic, as is the question of

whether those claims will be abandoned now.

The Court is aware that the matters in this bankruptcy case are important to the Slovak

Republic and Eurogas II not on their own account, but because the parties hope to gain an

advantage in the Arbitration Proceeding. While the Court does not presume to define the issues

in a matter before another court, this background is necessary in order to explain the unique

6

motivations of the parties in this action, and why some of the typical bankruptcy procedures must be adapted to this situation. This matter is not the ordinary debtor-creditor setting in which a debtor seeks to restructure debt or obtain a discharge and a creditor seeks payment; instead, the real dispute is about the ownership of the Talc Claims and how that may affect the Arbitration Proceeding. The payment of money to the Trustee appears to be a secondary matter for all of the parties except for the Trustee. It is very important to the Trustee and the estate however.

There are several other components to be considered that are motivating the parties. TEG filed Proof of Claim 1-1 in the amount of $113,371,837.65. It has now stated to this Court that it will release its claim against Eurogas I's estate but retain it against Euogas II in hopes that it is the successful party in the Arbitration Proceeding. Accordingly, TEG's motivation here is again relative as it has its sights set on the outcome in Paris. Further, the Trustee has no current funds and no other known assets in the estate other than the possible Talc Claims or some leverage to abandon the same.

## IV. DISCUSSION

### A.   The Agreement

The order reopening the case directed the Trustee to investigate whether the Talc Claims were property of the bankruptcy estate. The Trustee reviewed the documents and information available to the Former Trustee, reviewed the relevant filings in the Arbitration Proceeding, conducted independent legal research, and met with representatives of the parties in interest in the Arbitration Proceeding. The process and conclusions were stated in the Agreement:

> Based on her independent investigation, the Trustee has concluded that (a) the Former Trustee had information available to him concerning the existence of the Talc Claims; (b) the Former Trustee did not expressly abandon the Talc Claims,

7

but may or may not have intended that the Talc Claims would be abandoned upon closing of the Bankruptcy Case; (c) in any case, the issue whether the Talc Claims were abandoned by the Former Trustee has not been resolved; (d) to the extent the Talc Claims may not have been abandoned by the Former Trustee, they are burdensome to the estate and of inconsequential value to the estate; (e) creditors would stand to benefit from EuroGas pursuing the Talc Claims, because EuroGas has assumed the Debtors liabilities; and (f) an abandonment of whatever remaining interest the Bankruptcy Estate may have in the Talc Claims *nunc pro tunc* to the petition date under the terms of this Agreement is in the best interests of creditors.[4]

The major financial terms of the Agreement are: (1) Eurogas II has remitted $150,000 to the Trustee, which will be returned if the Agreement is not approved; (2) the Trustee will file a notice of abandonment of any remaining interest, if any, that the bankruptcy estate may still have in the Talc Claims. The Agreement is expressly conditioned upon the Court's approval of the Trustee's Notice of Proposed Abandonment, which is requested to be *nunc pro tunc* to the petition date; (3) an additional remittance will be paid to the Trustee, equal to the lesser of (a) $100,000.00; or (b) the amount necessary to pay the administrative claims of the estate, including the Trustee commission as fixed by the Court, plus $175,000 for distribution to creditors. The effect of this paragraph is to cap the amount Eurogas II will pay at $250,000; and (4) TEG will withdraw Proof of Claim 1-1, or amend the amount down to $0.00. The effect of this amendment is that the money paid by Eurogas II will be distributed to creditors other than TEG, which will result in a payout of approximately 15% to 20% of the previously filed claims to the remaining unsecured creditors.[5]

---

[4]Agreement at paragraph P, available at Dkt. No. 209, Motion to Approve Agreement at Exhibit A.

[5]Again, because Eurogas I did not file Schedules or a Statement of Financial Affairs in a timely manner, there is some uncertainty as to the return to creditors.  However, with the assertion of Eurogas II that it assumed all of the debts of Eurogas I, it may be a difference

### 1.    Negotiations leading up to the Agreement

The Trustee testified and was extensively cross-examined about the negotiations she undertook with both the Slovak Republic and Eurogas II before entering into the Agreement. The Court finds that her testimony was credible, and makes the following summary.

The Trustee concluded that the Talc Claims could not easily be liquidated because they are the focus of the dispute that is pending before the Arbitration Tribunal. The Trustee also concluded that it was not realistic to attempt to intervene in the Arbitration Proceeding in order to assert any rights the bankruptcy estate may hold, based on her belief that an attempt to intervene would cost between $1.5 and $2 million in legal fees and take several years. Even if the Trustee undertook such an effort, she might not succeed in gaining any benefit for the bankruptcy estate. In order for the bankruptcy estate to realize any value from the Talc Claims, the Trustee believed she would have to enter into a transaction with either Eurogas II or the Slovak Republic. She negotiated with both parties in an attempt to find the best deal for creditors.

The Slovak Republic's initial offer involved payments that would fund the necessary adversary proceedings to obtain rulings from the Court that the Talc Claims were not abandoned when the case was closed in 2007, but remained property of the bankruptcy estate and so could be sold by the Trustee. Additional payments would be made if the Trustee prevailed on these claims, and the Slovak Republic would purchase the Talc Claims from the bankruptcy estate. The dollar values in the offer varied during the discussions, but in each version, a portion of the payment was earmarked for the Trustee's litigation costs.

The offer from Eurogas II did not require any adversary proceedings. The Trustee entered

_____

without a distinction in the long run.

into an Agreement, the terms of which were described previously. In the Trustee's mind, the deal with Eurogas II offered two main benefits to creditors: (1) The matter could close quickly without further litigation; and (2) Claim 1-1 would be withdrawn or amended down to zero, which would substantially increase the distribution to the remaining creditors.

After the Agreement was executed and the Motion to Approve Agreement was filed, the Trustee received another offer from the Slovak Republic. In this offer, the Slovak Republic offered $250,000 to purchase the Talc Claims on a quitclaim basis (the "Quitclaim Offer"), accepting whatever interest the bankruptcy estate had in the Talc Claims without requiring the Trustee to file an adversary proceeding to determine that interest. The Slovak Republic has also filed an Objection to Claim 1-1.

In explaining why she decided to maintain the Agreement with Eurogas II rather than pursuing the Quitclaim Offer from the Slovak Republic, the Trustee stated that she believed the Agreement is a better deal for creditors. She noted that the offers were different in their construction, based on the agendas of the two parties in the Arbitration Proceeding. Each was seeking an advantageous outcome in this matter to strengthen their arguments before the Arbitration Tribunal. The Trustee focused her criteria on which offer would be better for creditors. She explained the reasons she concluded that the Agreement with Eurogas II would provide a better result for creditors than the Quitclaim Offer from the Slovak Republic. The Trustee gave significant weight to the fact that Claim 1-1 would be voluntarily withdrawn as part of the Agreement with Eurogas II, leaving more money for the other creditors. While the Slovak Republic has filed an Objection to Claim 1-1 and seeks to have it disallowed, that objection will be vigorously contested by TEG. It should be noted here that Mr. David Sacks also testified in

this matter as an officer and the sole owner of TEG. The Court finds his testimony credible and

based on the same, the Court concludes that TEG's claim is not clearly objectionable, but has

some basis for it. However, the Slovak Republic presented several theories under which the

claim could be challenged and the Court makes no determination as to its final allowability here.

As stated above, the Trustee's testimony was credible, and the Court finds no reason to

question the Trustee's business judgment.

### B.    The Nature of the Agreement

In the Motion, the Trustee analyzed the Agreement under the factors set forth in the

*Kopexa*[6] case, which is the standard for evaluating a compromise or settlement under Bankruptcy

Rule 9019. The Slovak Republic has objected to the Motion on the grounds that the Agreement is

actually a sale, and not a settlement. A typical settlement agreement in bankruptcy involves a

claim of a specific dollar amount, and then a compromise of that amount in lieu of further

litigation. The Agreement in this case does not settle a typical claim, but as the Court has already

noted, this case is unique and the parties involved are not motivated by ordinary concerns of

debtors and creditors. The Slovak Republic is objecting, not because it believes it will be paid

more as a creditor if the Agreement is rejected, but because it stands to benefit in the Arbitration

Proceeding if the Court denies the Trustee's Motion. A party's motivation for objecting does not

change the Court's standard of review. The Court will evaluate the factors it deems applicable to

it under the Bankruptcy Code and Rules.

The Slovak Republic argues that if the Agreement is a sale, then the sale procedures of 11

U.S.C. § 363 should be followed. This is not the first time a trustee has presented a settlement

---

[6]*In re Kopexa Realty Venture Co.*, 213 B.R. 1020 (10th Cir. B.A.P. 1997).

agreement that contains characteristics of both a sale and a settlement or compromise. In situations like these, "courts have also held that '[w]hether to impose formal sale procedures is ultimately a matter of discretion that depends upon the dynamics of the particular situation.'"[7] A sale presupposes a property right that can be sold. If the Trustee were to undertake to sell the Talc Claims, she would need to ascertain whether the bankruptcy estate owns the Talc Claims. As the Trustee stated in the Agreement, and as she testified, after much investigation, she was unable to determine whether or not the Talc Claims remained with the bankruptcy estate or were abandoned when the case was closed in 2007.[8] The ownership of the Talc Claims is a hotly contested matter, and would require extensive litigation before any sale could take place. The 'dynamics of this particular situation' indicate that formal sale procedures under § 363 would be a lengthy and litigious process, increasing administrative expenses and delaying distribution to creditors without offering any compensating benefit to the bankruptcy estate. The Trustee has determined that the Talc Claims are only of interest and value to the Slovak Republic and Eurogas II. The Trustee has undertaken good faith negotiations with both parties. It does not appear that there is any advantage to be gained for creditors by applying the procedures and standards of § 363 in lieu of treating this transaction under Rule 9019.

Bankruptcy Rule 9019 gives the Court authority to approve "a compromise or settlement." The Court concludes that, to the extent the Agreement is not a classic settlement, it is still within the purview of Rule 9019 as a compromise. The Trustee has compromised several

---

[7]*Rich Dad Operating Co., LLC v. Zubrod (In re Rich Global)*, 2016 WL 3397685 at *4 (10th Cir. 2016) (unreported opinion) (quoting *Goodwin v. Mickey Thompson Enter. Grp., Inc. (In re Mickey Thompson Enter. Grp., Inc.)*, 292 B.R. 415, 422 (B.A.P. 9th Cir. 2003)).

[8]*See* the Agreement at paragraph P., quoted supra.

issues that would require protracted litigation. Avoiding litigation may be the subject of a compromise or settlement.[9]

Accordingly, the Court concludes that the *Kopexa* standards are the proper standard under which to analyze the Motion to Approve Agreement. As this Court has previously stated:

> The underlying test for the bankruptcy court's approval [of a compromise or settlement] is whether the Trustee's actions are "within the universe of reasonable actions," not whether pressing onward might produce more funds. The Court's role is to determine if compromise and settlement is in best interest of creditors. Further, the Court must apprise itself of "all facts necessary for an intelligent and objective opinion of probabilities of ultimate success should the claim be litigated."[10]

The Court has conducted several hearings, reviewed the extensive exhibits received, heard testimony, and read the pleadings and other court papers submitted by the parties. The Court has invested this time even though "the Court is not required to hold a mini-trial on the issues involved in the case being compromised. Rather, the obligation of the court is to canvass '. . . the issues and see whether the settlement falls below the lowest point in the range of reasonableness.'"[11]

With that standard in mind, the Court turns to a review of the *Kopexa* factors.

## C.    The *Kopexa* Factors

"Appellate courts have held that a bankruptcy court's approval of a compromise must be affirmed unless the court's determination is either (1) completely devoid of minimum evidentiary

---

[9]*See e.g., Rich Dad Operating Co., LLC v. Zubrod (In re Rich Global)*, 2016 WL 3397685 at *4 (10th Cir. 2016) (unreported opinion) ("The 'claims' at issue are defensive appellate arguments.").

[10]*In re Dennett*, 449 B.R. 139, 144–45 (Bankr. D. Utah 2011) (internal citations omitted).

[11]*Id*. at 145 (alteration in original) (citation omitted).

13

support displaying some hue of credibility, or (2) bears no rational relationship to the supportive

evidentiary data."[12] Although this Court is not sitting as an appeals court, the guidance from the

appellate courts must be considered. The standard for approval of a compromise or settlement in

the Tenth Circuit  is drawn from the *Kopexa* case, and similar factors are considered in many

circuits,[13] which requires review of four questions intended to evaluate whether the settlement is

appropriate. The four *Kopexa* factors are (1) the probability of success in the underlying

litigation; (2) the difficulty in collecting a judgment; (3) the complexity and expense of the

litigation; and (4) the interests of creditors in deference to their reasonable views.[14]

### 1.      The probability of success in the litigation

The Talc Claims are subject to litigation before the Arbitration Tribunal, and this

Agreement does not purport to settle that litigation. The Trustee has concluded it would not be

practicable to attempt to intervene in the Arbitration Proceeding due to the great cost, expense

and complexity of bringing a case before the Arbitration Tribunal under the Bilateral Investment

Treaty between the United States and the Slovak Republic. Even if she were able to intervene,

the probability of success is unknown.

The Slovak Republic argues that the Trustee's focus on pursuing the Talc Claims before

the Arbitration Tribunal is incorrect, and that the real settlement is with Eurogas II and whether

the Talc Claims are property of the estate. To the extent this is true, the Trustee's testimony

---

[12]*Id.* at 144 (internal citations omitted).

[13]*See, e.g., Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639 (3rd Cir. 2006); *Jeffrey v. Desmond*, 70 F.3d 183 (1st Cir. 1995); *Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377 (9th Cir. 1986).

[14]*See In re Kopexa Realty Venture Co.*, 213 B.R. 1020, 1022 (B.A.P. 10th Cir. 1997).

14

supplemented her statements in the Motion. The status of the Talc Claims in this bankruptcy case

is unsettled because the Trustee was unable to determine if the Talc Claims had been abandoned

when the case was closed in 2007. Definitively settling that issue would require an adversary

proceeding, which is also litigation the Trustee seeks to avoid. As the Trustee has noted in her

testimony, both parties to this matter are fully funded, and motivated to fight hard to maintain

their positions. The bankruptcy estate has no assets with which to pursue costly litigation. The

Trustee would be challenged in court, regardless of which position she chose to take. The

probability of success in litigation to determine the status of the Talc Claims is unforeseeable.

With the statements in the Motion and the credible testimony of the Trustee, the Court finds that

the probability of successful litigation with Eurogas II in this bankruptcy court to determine the

ownership status of the Talc Claims is uncertain.

This factor weighs in favor of approving the Agreement.

## 2.     Difficulties in Collection

Assuming the Trustee pursued costly and lengthy litigation and won a monetary judgment

against either party, there is support for the Trustee's conclusion that collecting on a judgment

would be difficult. The evidence on this point is sketchy. Here, it is not so much a question of the

Trustee collecting on a possible judgment, but rather liquidating the Talc Claims and possibly

selling them off. Accordingly, the Court determines that not much weight should be afforded this

factor.

This factor accordingly neither weighs in favor of approving the Agreement or

disapproving of the same.

## 3.     Complexity and Expense of Litigation

If the Trustee were to pursue the Talc Claims before the Arbitration Tribunal, she would be required to (a) litigate with Eurogas II, the Slovak Republic and possibly others, whether the Talc Claims are property of the bankruptcy estate; (b) file a new proceeding either before the Arbitration Tribunal, where she may or may not have standing, or in the courts of the Slovak Republic; (c) marshal evidence and present the case; and (d) pursue collection and defend against any appeals or collateral attacks on the judgment or ruling.

The Trustee estimates the total cost of such litigation before the Arbitration Tribunal to be between $1.75 and 2.0 million and last as long as four or five years. There was no evidence presented that rebutted this. This estimate is consistent with the nature of the proceedings that have already taken place involving Eurogas II and the Slovak Republic. As already stated, the bankruptcy estate has no assets to pay for such an expensive course of action.

Another component of this factor is complexity. The judicial proceedings in the Slovak Republic centered around the procedures under which the Slovak Republic revoked the mining rights. Accordingly, there has been no judicial determination as to the ownership of the Talc Claims. At least one party (Eurogas II), has determined that further litigation would prove difficult and accordingly has sought arbitration. Arbitration is generally sought for several reasons including resolving highly complex issues. The Court finds that the issue of ownership is complex.

The same analysis would apply if the Trustee were to attempt to litigate ownership interests in this Court. Accordingly, The Court finds that the issue of ownership is complex and expensive to determine. This factor weighs in favor of approving the Settlement.

### 4.      The Interests of Creditors

16

The Former Trustee distributed over $600,000 before the case was closed in 2007.

Because Claim 1-1 for more than $113 million was still outstanding at that time, the distribution

to creditors was approximately 0.56 percent of allowed unsecured claims, and most of that went

to TEG. Under the terms of the Agreement, Eurogas II will pay a maximum amount of $175,000

for distribution to creditors. With the waiver of Claim 1-1 provided for in the Agreement, the

money distributed to the remaining creditors could be approximately 15% to 20% of those

remaining claims.

The terms of the Agreement do not require any further litigation or adversary

proceedings, which were part of the initial offer from the Slovak Republic. And while the Slovak

Republic removed the requirements for litigation in its Quitclaim Offer, the distribution to

creditors would not be nearly as advantageous because Claim 1-1 would not be withdrawn but

would need to be challenged in further litigation.

The Court finds that this factor weighs in favor of approving the Agreement.

Accordingly, the Court finds and concludes (1) that the Trustee has adequately explained

the business reasons for entering into this Agreement; (2) that the business reason is business

judgment discretion allocated to a trustee and not an abuse of that discretion; and (3) that the

Agreement is acceptable under the *Kopexa* factors. The Court will approve the Agreement.

### C.   Abandonment of the Talc Claims

As required by the terms of the Agreement, the Trustee has filed notice of her intent to

abandon the Talc Claims under § 554(a), which states, "After notice and a hearing, the trustee

may abandon any property of the estate that is burdensome to the estate or that is of

inconsequential value and benefit to the estate." When evaluating a motion for abandonment, the

focus of the Court's inquiry "is whether the property is burdensome or of inconsequential value to the estate."[15] In reaching her conclusion, the Trustee reviewed expert reports prepared by two different lawyers in Salt Lake City who were identified. Although the parties elected not to seek to introduce those reports into evidence in this matter, the Court determines that such review and evaluation of reports greatly assisted the Trustee in making her determination to abandon.

The Trustee has concluded that the Talc Claims are burdensome to the estate. There is uncertainty about whether the Talc Claims are property of the estate, or if they were abandoned when this case was closed in 2007, and it would require litigation to settle that question. If the Trustee does not abandon the Talc Claims, she will need to either initiate or defend litigation about the ownership of the Talc Claims with the well-funded and highly motivated parties in this case. Time-consuming and costly litigation burdens a bankruptcy estate with administrative costs and delay. Part of a trustee's responsibility in administering an estate is to determine what assets should be abandoned. Another responsibility is to act "as expeditiously as is compatible with the best interests of the parties in interest."[16]

The Talc Claims are very valuable to the parties in the Arbitration Proceeding, but because they are not liquid claims, or easily administered, the Talc Claims are of inconsequential value to the bankruptcy estate outside of an arrangement with one of those two parties. The Trustee is trying to maximize the value to the estate with the Agreement with Eurogas II.

The Slovak Republic has objected to abandonment, but has not shown how denying the motion to abandon will benefit the bankruptcy estate. "The court need not consider speculative

---

[15]*In re Rich*, 510 B.R. 366, 369 (Bankr. D. Utah 2014).

[16]11 U.S.C. § 704(a)(1).

18

factors when determining whether abandonment is appropriate under Section 554(b) of the

Bankruptcy Code."[17] The speculative benefit described by the Slovak Republic is contained

within its Quitclaim Offer, an offer which the Trustee rejected for business reasons that she

explained in her testimony. The Court will not second-guess the Trustee's business judgment

when she has so credibly explained her grounds for decision.[18]

Accordingly, the Trustee should be authorized to abandon the Talc Claims under § 554(a)

as being burdensome or of inconsequential value to the estate. The Trustee has requested a

determination that the abandonment is effective *nunc pro tunc* to the petition date. Making a

judicial finding and conclusion that an action should be effective *nunc pro tunc* is a remedy that

is available only in "extraordinary circumstances."[19] The legal effect of abandonment is

determined as a matter of law.[20] When property is abandoned, it "reverts to the debtor and

---

[17]*Kaler v. Nelson (In re Nelson)*, 251 B.R. 857, 860 (B.A.P. 8th Cir. 2000).

[18]*See, e.g., Allen v. Absher (In re Allen)*, 607 F. App'x 840, 844 (10th Cir. 2015)
(unpublished opinion) (affirming the bankruptcy court's finding that the sale transaction was
within the trustee's sound business judgment because the record included evidentiary support for
the trustee's actions and no evidence of bad faith); *In re JL Bldg., LLC*, 452 B.R. 854, 859
(Bankr. D. Utah 2011) (stating that courts should show deference to a trustee's business
judgment when there is no showing of an abuse of discretion); *In re Curlew Valley Associates*,
14 B.R. 506, 513 (Bankr. D. Utah 1981) (declining to interfere with a trustee's business
judgment when a decision was made in good faith, upon a reasonable basis, and was within the
scope of the trustee's authority).

[19]*Land v. First Nat'l Bank of Alamosa (In re Land)*, 943 F.2d 1265, 1268 (10th Cir.
1991).

[20]*See, e.g., Rajala v. Buerge (In re Buerge)*, 2013 WL 4409698, at *3 (Bankr. D. Kan.
Aug. 13, 2013) ("Abandonment is effective retroactively to the petition date as if the debtor were
its owner during the pendency of this bankruptcy.'")

stands as if no bankruptcy petition was filed."[21]

Abandoning the Talc Claims removes the Trustee and the bankruptcy estate from the dispute in the Arbitration Proceeding about the ownership of the Talc Claims. "Following abandonment, 'whoever had the possessory right to the property at the filing of bankruptcy again reacquires that right.'"[22] Eurogas I was administratively dissolved in 2001 for failure to file an annual report and pay a nominal fee. Eurogas II was incorporated after the bankruptcy petition was filed, and signed the Merger documents in which it sought to inherit all Eurogas I's assets and liabilities.[23] Whether the Talc Claims passed to Eurogas II in the Merger or remained with Eurogas I will be a matter for the Arbitration Tribunal to decide. This Court takes no position on that question other than to note that whatever interest the bankruptcy estate had or has in the Talc Claims is authorized to be abandoned by the Trustee.

## V. CONCLUSIONS OF LAW

The Court has authority pursuant to Bankruptcy Rule 9019 to consider and authorize the Agreement submitted by the Trustee. The Court concludes that the Trustee has properly exercised her business judgment in entering into this Agreement and has not abused her

---

[21]*In re Dewsnup*, 908 F.2d 588, 590 (10th Cir. 1990), *aff'd sub nom. Dewsnup v. Timm* 502 U.S. 410 (1992) ("Property abandoned under this section ceases to be part of the estate. . . . It reverts to the debtor and stands as if no bankruptcy petition was filed."); *see also In re Cruseturner*, 8 B.R. 581, 591 (Bankr. D. Utah 1981) ("Thus, when the trustee abandons property, the property stands as if no bankruptcy had been filed and the debtor enjoys the same claim to it and interest in it as he held previous to the filing of bankruptcy.").

[22]*In re Dewsnup*, 908 F.2d 588, 590 (10th Cir. 1990), *aff'd sub nom. Dewsnup v. Timm,* 502 U.S. 410 (1992) (quoting *Dewsnup v. Timm (In re Dewsnup)*, 87 B.R. 676, 681 (Bankr. D. Utah 1988)).

[23]A copy of the document effecting the Merger is attached as Exhibit C to the Slovak Republic's objection to the Motion, filed at Dkt. No. 235.

discretion. The Court further concludes that the Trustee has complied with the standards outlined

by *Kopexa* and has considered the best interest of creditors. The Court has considered the Slovak

Republic's objection, and overrules it.

The Court approves the Trustee's Notice of Intent to Abandon, concluding that the Talc

Claims are burdensome to the estate due to the litigation that would be necessary in order to sell

the Talc Claims, and are of inconsequential value to the estate because the Talc Claims cannot

be freely liquidated by the Trustee but are only valuable to the Slovak Republic and Eurogas II.

The Court further concludes that the Trustee reasonably pursued negotiations with both parties

before she exercised her business judgment to prefer one offer above the other.

The Trustee's Motion to Approve Agreement shall be GRANTED.

The Trustee's Notice of Proposed Abandonment shall be APPROVED.

A separate order accompanying this decision will be entered.

_____End of Document_____

SERVICE  LIST

Service of the foregoing MEMORANDUM DECISION  will be effected through the Bankruptcy Noticing Center to each party listed below in the manner designated and to each party listed on the MATRIX.

By electronic  service:  I certify that the parties of record in this case as identified below are registered CM/ECF users:

- David W. Alexander   david.alexander@squirepb.com
- Matthew L. Anderson   manderson@fabianvancott.com, mbeck@fabianvancott.com
- Stephen P. Anway   stephen.anway@squirepb.com
- Matthew M. Boley   mboley@cohnekinghorn.com, jhasty@cohnekinghorn.com
- Mona Lyman Burton   mburton@hollandhart.com,
  ckelly@hollandhart.com;intaketeam@hollandhart.com;slclitdocket@hollandhart.com
- Doyle S. Byers   DSByers@hollandhart.com, BKNoble@hollandhart.com
- James Vincent Cameron tr   Vince.Cameron@usdoj.gov,
  James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Suzanne.Verhaal@usdoj.gov
- Jared Inouye   jinouye@mabeymurray.com,
  ebower@btjd.com;docketing@btjd.com;cmontoya@btjd.com
- Annette W. Jarvis   ajarvis@rqn.com,
  smith.ron@dorsey.com;slc.lit@dorsey.com;posada.monica@dorsey.com
- Michael R. Johnson   mjohnson@rqn.com, docket@rqn.com;dburton@rqn.com
- Penrod W. Keith   pkeith@djplaw.com, khughes@djplaw.com
- Reid W. Lambert   rwlambert@wklawpc.com, kmacrae@wklawpc.com
- Robert B. Lochhead   rlochhead@parrbrown.com, calendar@parrbrown.com
- Elizabeth R. Loveridge   eloveridge@wklawpc.com, rchristensen@wklawpc.com
- Elizaeth R. Loveridge tr   eloveridge@wklawpc.com,
  rchristensen@wklawpc.com;eloveridge@ecf.epiqsystems.com
- Steven J. McCardell   smccardell@djplaw.com, khughes@djplaw.com
- Steven C. Strong   scs@pkhlawyers.com, jhasty@cohnekinghorn.com
- Engels Tejeda   ejtejeda@hollandhart.com,
  tjones@hollandhart.com,slclitdocket@hollandhart.com,intaketeam@hollandhart.com
- United States Trustee   USTPRegion19.SK.ECF@usdoj.gov

By U.S. Mail – In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

Eurogas, Inc.
942 E. 7145 S., Suite A-101
Midvale, UT 84047

22

Annette W. Jarvis
Ray Quinney & Nebeker
36 South State, Suite 1400
Salt Lake City, UT 84111

Joel T. Marker
McKay Burton & Thurman
170 South Main Street
Suite 800
Salt Lake City, UT 84101

Jarrod B. Martin
Nathan Sommers Jacobs
A Professional Corporation
2800 Post Oak Blvd. 61st Floor
Houston, TX 77056

PricewaterhouseCoopers L.L.P.
One Utah Center
201 South Main Street
Suite 900
Salt Lake City, UT 84111

W. Steve Smith
2015 Crocker Street
Houston, TX 77006

Spencer D. Solomon
Nathan Sommers Jacobs
A Professional Corporation
2800 Post Oak Blvd. 61st Fl
Houston, TX 77056

Ronald J. Sommers
2800 Post Oak Blvd, 61st Fl
Houston, TX 77056-5705

Mark A. Weisbart
Kessler & Collins, P.C.
5959 Sherry Lane, Suite 222
Dallas, TX 75225